FILED

01/28/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 14, 2025

## STATE OF TENNESSEE v. CORDARO DYWON BLACK

**Appeal from the Circuit Court for Madison County**
**No. 22-137   Kyle C. Atkins, Judge**

_____

## No. W2024-00802-CCA-R3-CD
_____

A Madison County jury convicted the defendant, Cordaro Dywon Black, of four counts of rape of a child and one count of incest. Following a sentencing hearing, the trial court imposed an effective sentence of sixty-four years and six months in confinement. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. Ross Dyer, J., delivered the opinion of the court, in which John W. Campbell, Sr., and Matthew J. Wilson, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Cordaro Dywon Black.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Jody Pickens, District Attorney General; and Justin Prescott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On January 31, 2022, a Madison County Grand Jury indicted the defendant for four counts of rape of a child and one count of incest. The defendant was charged with abusing

L.M., his stepdaughter.[1]  The victim, who was born in April 2007, was sixteen years old at the time of trial.

The allegations against the defendant arose in June 2017.  The victim and her siblings lived with their mother and the defendant, and the victim, who was ten years old at the time, would sometimes go into her mother's bedroom during the night and make a pallet on the floor when she was afraid to sleep by herself.  One night, as the victim was lying on the floor in her mother and the defendant's bedroom, she noticed the defendant was awake and "held his hand for comfort."  However, he began to "do weird things with [the victim's] hand."  The defendant placed her hand on his penis and put his fingers in the victim's mouth.  The victim became scared and left the bedroom; however, the defendant followed her and told her that it was ok "if [she] didn't want him to do that."

However, despite making this statement, the defendant continued to have sexual encounters with the victim.  The defendant forced the victim to perform oral sex on him "a few times," he digitally penetrated the victim "a lot," and he performed oral sex on the victim.  The defendant also attempted to perform anal sex on the victim but was unable to complete the act.  The victim initially disclosed the abuse to her mother toward the end of 2018 or the beginning of 2019.  However, nothing changed, and the defendant continued to live with the victim and her family.

In June 2021, the victim saw the defendant masturbating in the kitchen.  She became "very scared" and immediately texted her biological father.  After the victim informed him of the situation, her father called the police.  The victim testified that, when the defendant was abusing her, he told her that he would lose his family if the victim told anyone, and she did not want to be responsible for that happening.

Following the defendant's arrest, he waived his *Miranda*[2] rights and provided a videotaped statement in which he confessed to sexually abusing the victim.  Additionally, the defendant provided the following written statement:

> In 2017 my stepdaughter would come in our bedroom and make a pallet on the floor.  At this time, I was in a dark place.  I would tickle her, and I would finger her.  I would perform oral sex on [L.M.], and [L.M.] would perform oral sex on me.  I can't remember whether I tried to have anal sex with [L.M.] or not.  [L.M.] would also "jac me off."  These events in (sic) occurred in June of 2017.  The most recent incident occurred on 6/24/21.  I was in the

---

[1] It is the policy of this Court to refer to victims of sexual abuse by their initials.  For purposes of this opinion, "the victim" will refer to L.M. unless otherwise noted.

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

kitchen and [L.M.] was in the living room. I had a bath towel wrapped around me. I removed the towel and pulled on my penis a few times. I don't know if [L.M.] saw me or not. [L.M.] told her mom. I apologized to [L.M.] for what happened. In 2019 my wife found out about the previous sex occurrences, and we separated for a while. After I got out of Pathways for treatment, I apologized to my wife, and we got back together. I believe that I need treatment for depression.

The defendant testified on his own behalf, denying that he ever touched the victim inappropriately or that the victim ever touched him in a sexual manner. He also stated that the last incident in which the victim claimed to have seen him masturbating in the kitchen was a misunderstanding. According to the defendant, his daughter needed to use the bathroom while he was shaving, and he was waiting in the kitchen for her to finish. When the victim saw him, he was not masturbating. Instead, he was pulling on his penis due to a surgery he had recently had to remove extra skin from his penis. The defendant testified that during his interview with police he indicated twice that he did not wish to continue speaking. However, the police officers did not stop the interrogation, using questions which the defendant felt were coercive and leading. The defendant stated that he felt scared during the interview and confessed to things that were not true because he was suffering from depression and anxiety. The defendant also testified that he was extremely cold and believed that the officers would let him go home if he told them what they wanted to hear.

Following deliberations, the jury found the defendant guilty of four counts of rape of a child and one count of incest, and trial court subsequently sentenced the defendant to an effective sentence of sixty-four years and six months in confinement. The defendant filed a motion for new trial which the trial court denied. This timely appeal followed.

*Analysis*

The defendant's sole issue on appeal is the sufficiency of the evidence to support his convictions. The State contends the evidence is sufficient, and we agree.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and

all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury convicted the defendant of four counts of rape of a child and one count of incest for his crimes against the victim. The defendant contends the evidence is insufficient to support these convictions because they rest solely on the testimony of the victim, absent any physical proof. The State contends the victim's trial testimony alone was sufficient to support the defendant's convictions.

At the time of the offense, rape of a child was "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522 (2017). Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). "A person commits incest who engages in sexual penetration with a person, knowing the person to be, without regard to legitimacy, the person's stepchild." Tenn. Code Ann. § 39-15-302(a)(1). The victim in this case is the defendant's stepdaughter.

Viewed in the light most favorable to the State, the proof at trial revealed the victim went into the defendant's bedroom and made a pallet on the floor when she was afraid to sleep alone in her room. She held the defendant's hand for comfort, and the defendant put the victim's hand on the defendant's penis and put his fingers in the victim's mouth. Although the defendant told the victim that it was ok "if [she] didn't want him to do that,"

the defendant continued having sexual encounters with the victim. The defendant performed oral sex on the victim, digitally penetrated the victim, forced the victim to perform oral sex on him, and attempted to perform anal sex on the victim. The abuse occurred in June 2017 when the victim was ten years old. Following his arrest, the defendant admitted to raping the victim in both videotaped and written statements. However, the defendant denied raping the victim at trial. Based on this evidence, a rational jury could find rape of a child and incest beyond a reasonable doubt.

Although the defendant argues the State failed to present any evidence to corroborate the victim's testimony, her testimony alone is sufficient to support the defendant's convictions. *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (stating a child victim's testimony regarding sexual contact can be sufficient to support a defendant's conviction). Moreover, questions regarding the victim's credibility and the weight and value to be given her testimony are to be determined by the trier of fact and not this Court. *State v. Bland*, 958 S.W.2d 659, 659 (Tenn. 1997). Through its finding of guilt, the jury accredited the testimony of the victim and rejected that of the defendant, and we will not disturb that finding on appeal. *Id.* The defendant is not entitled to relief on this issue.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE

- 5 -